# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| CANOPIUS US INSURANCE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:15-cv-03673-DCN |
| vs. ) | |
| ) | |
| CHARLES MIDDLETON, JR., d/b/a/ ) | |
| CHARLEY O'S, OMAR HAMILTON, ) | |
| JAMAR HAMILTON, ANTWONIA ) | |
| HEYWARD, BRANDON GREENE, and ) | |
| LATEIKA JONES, ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on defendant Charles Middleton ("Middleton") d/b/a Charley O's motion to set aside default. For the reasons set forth below, the court grants Middleton's motion.

## I.  BACKGROUND

Plaintiff Canopius US Insurance, Inc. ("Canopius") is an eligible surplus lines insurer organized under the laws of Delaware. Compl. ¶ 1. Canopius issued a commercial general liability insurance policy to Middleton. Id. ¶ 6. Middleton leased the insured property and utilized it as a restaurant known as Charley O's. Id. ¶ 7. On February 22, 2015, multiple gunshots were fired inside and outside of Charley O's. Id. ¶ 8. Several people were alleged to have been shot, including defendants Omar Hamilton ("Hamilton"), Jamar Hamilton ("Jamar"), Antwonia Heyward ("Heyward"), Brandon Greene ("Greene"), and Lateika Jones ("Jones"). Id. The victims of the shooting sued

1

Middleton, alleging that Charley O's was not operated in a manner so as to provide a safe environment, which resulted in their injuries.

Canopius filed the present action on September 15, 2015 pursuant to the federal declaratory judgment act, 28 U.S.C. § 2201, requesting that the court declare that it has no obligation to indemnify Middleton and/or the underlying claimants for any bodily injuries sustained at Charley O's on or about February 22, 2015. Canopius served Middleton with the complaint on September 22, 2015. On September 30, 2015, Canopius filed a Proof of Service as to Middleton.

On October 14, 2015, Canopius filed a request for entry of default as to Middleton. The court filed an entry of default on October 28, 2015. On November 3, 2015, Middleton's attorney Jonathan Krell ("Krell") sent Canopius's attorney Morgan Templeton ("Templeton") an email requesting that Middleton be relieved from the entry of default because: (1) he allegedly suffers from health issues that affect his cognition; and (2) an attorney advised Middleton's son that his father should not seek legal counsel. Resp. Ex. 2. On November 6, 2015, Templeton indicated that Canopius was not willing to lift the entry of default. Id. On November 24, 2015, Middleton filed the present motion to set aside default. Canopius filed a response in opposition to the motion on December 8, 2015, and Middleton filed a reply on December 17, 2015. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). The

Fourth Circuit Court of Appeals has held that "although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted). Furthermore, the decision to set aside an entry of default is "committed to the sound discretion of the trial court" and should only be disturbed upon a finding of an abuse of discretion. See Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Williams v. Blitz, 226 F.2d 463 (4th Cir. 1955); Papagianakis v. The Samos, 186 F.2d 257, 263 (4th Cir. 1950). Generally speaking, "a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967). This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults . . . ." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.").

In Palmetto, this court reviewed the standards used in Rule 55 and Rule 60 cases in the Fourth Circuit and determined that a party attempting to have a default judgment set aside bears a heavier burden than a party that is simply in default. Palmetto Fed. Sav. Bank of S.C. v. Indus. Valley Title Ins. Co., 756 F. Supp. 925, 931 (D.S.C. 1991) vacated, No. 1:90-cv-1599-1, 1991 WL 832830 (D.S.C. May 15, 1991) (vacated upon request of the parties as part of a compromised settlement). However, this court did note

that "the factors set forth in Moradi, though they were applied to a Rule 60(b) motion, also provide useful guidelines in a motion to set aside an entry of default." Id. In short, the factors that determine whether an entry of default should be set aside include (1) the promptness of the defaulting party, (2) the presence or absence of a meritorious defense, (3) whether the party or counsel bears the responsibility for the default, (4) the prejudice that would result to the innocent party, (5) whether the defaulting party has a history of dilatory conduct, and (6) the availability of sanctions less drastic. Moradi, 673 F.2d at 728. Of the Moradi factors, courts have placed the greatest significance on the first one. See Moradi, 673 F.2d at 728; Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988); Lolatchy, 816 F.2d at 953; Palmetto, 756 F.Supp. at 932. The court should always keep an eye toward the preference for meritorious resolutions of disputes. Palmetto, 756 F.Supp. at 932.

### III.  DISCUSSION

Middleton asks this court to set aside the entry of default "upon the grounds that there is good cause." Def.'s Mot. 1. The court will apply the factors set forth in Moradi to determine whether Middleton has established good cause to warrant his request to set aside the entry of default.

### A.    Promptness of Defaulting Party

The court filed an entry of default on October 28, 2015, and Middleton filed the present motion on November 24, 2015. Canopius does not contest Middleton's promptness in filing his motion to set aside default. Thus, the court finds that Middleton was prompt in filing his motion.

### B.    Presence of a Meritorious Defense

Canopius argues that Middleton has failed to set forth a meritorious defense. Resp. 5.  "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."  Moradi, 673 F.2d at 727 (citing Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 252 n.8 (4th Cir. 1974)).  In his answer, Middleton filed a general denial but did not assert affirmative defenses or counterclaims; however, a "general denial of the claims is insufficient to overturn a default."  Univ. Forest Products E. Div., Inc. v. Mitchell, No. 7:08-cv-3943, 2009 WL 3299363, at *1 (D.S.C. Oct. 13, 2009) (quoting Hill v. Belk Stores Servs., Inc., 2007 WL 1200093, at *2 (W.D.N.C. Apr.19, 2007)).  Although Middleton asserts in his reply that "coverage should be had under the policy of insurance that is at issue in the underlying declaratory action," and thus submits he has a meritorious defense, neither Middleton's answer nor the affidavit actually advances a meritorious defense.  Reply 1–2.  During the January 6, 2015 hearing, Middleton set forth a meritorious defense, arguing that there were ambiguities in the applicable policy and that more discovery was necessary to determine Middleton's defenses.  Hr'g Trans. 2:22–3:7.

During the hearing, Canopius argued that a defaulting party must do more than simply list possible defenses to demonstrate the existence of a meritorious defense but must present underlying facts to support the defenses.  Hr'g Trans. 6:17–7:19 (citing Krantz v. KLI, Inc., No. 6:09-cv-01623, 2011 WL 1642375, at *4 (D.S.C. May 2, 2011).  Although the court in Krantz did hold that the moving party failed to carry its burden to demonstrate the existence of a meritorious defense because it failed to present underlying

5

facts to support its defenses, the court still granted the movant's motion to set aside the entry of default, citing the "unique circumstances" of the case. Id. Therefore, Krantz does not support Canopius's position because even though this "factor . . . weigh[ed] against the lifting of the default[,]" the court found it appropriate to set aside the entry of default. Id. The court holds that, during the January 6 hearing, Middleton set forth a meritorious defense that the policy provisions are ambiguous.

### C.     Whether the Party or Counsel Bears Responsibility

Middleton attached the affidavit of his son, Charles Middleton III ("Charles") to his reply. Reply Ex. 1 ¶ 2. Charles testified that approximately two years ago, his father suffered from multiple strokes. Due to Middleton' health issues, his son Charles handles his business affairs. Id. Charles stated that on behalf of his father, he consulted with attorneys who referred him to George Kefalos ("Kefalos"). Id. ¶ 3. Charles met with Kefalos, but Kefalos notified him that he had a conflict and could not represent Middleton. Id. ¶ 5. Charles subsequently met with the Law Offices of Fleet Freeman, LLC. Id. Fleet Freeman advised Charles that in reliance on Charles's representations that Charley O's was closed, that Middleton was disabled, and that Middleton had no assets to respond to any judgment that may be obtained against him, "it [was his] opinion that [Middleton] should not retain counsel to respond to the lawsuit." Reply Ex. 2. Charles testified that he waited too long to contact Middleton's current attorney in reliance on Fleet Freeman's advice. Reply Ex. 1 ¶ 6. Charles attested that "had it not been for the advice not to seek an attorney, [he] would have had [Middleton's current counsel] answer the complaint on behalf of [Middleton] in a timely fashion." Id. ¶ 7.

6

Middleton clearly relied on the advice of an attorney in failing to timely respond. Under these circumstances, Middleton bears the sole responsibility of the entry of default, not his current attorney. However, the court finds though although Middleton must bear the responsibility, his actions in seeking representation from at least three attorneys and relying upon the written advice of an attorney were reasonable. Even after he received the advice to not retain counsel to respond to the lawsuit, he consulted Krell who promptly sought to have the entry of default lifted. Krell sent Templeton an email three business days after the entry of default. Therefore, the court holds that this factor also weighs in favor of granting Middleton's motion to set aside the entry of default.

### D.    Prejudice to Canopius

Canopius asserts that the prejudice "is the litigation of its claims as to Middleton without any meritorious defenses being set forth by Middleton." Pl.'s Mot. 6. Middleton asserts that there will be no prejudice because the action is in its infancy and numerous other defendants have appeared and answered timely; therefore, the action will proceed on its merits regardless of whether or not Middleton is a party. Reply 1.

"In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 418 (4th Cir. 2010). Further, "no cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." Id. at 419 (emphasis in original). This case is in its infancy, and Middleton filed the present motion and his answer within a month of the entry of default. Therefore,

"regarding the issue of prejudice to [Canopius] from setting aside the entry of default . . . the record is, at best, neutral." Id.

### E.    History of Dilatory Action

Canopius argues that "misplacing the very process that brings a defendant in as a party is a serious oversight and a significant hindrance to an already burdened judicial process." Resp. 6. However, there is no indication that Middleton has a history of past dilatory action and one instance of dilatory conduct does not weigh in favor of upholding the entry of default.

Most importantly, Charles's affidavit demonstrates that his father is in failing health and that he relied on the advice of an attorney in not answering the complaint. In light of the "strong preference that . . . defaults be avoided and that claims and defenses be disposed of on their merits" and that Rule 55(c) motions must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments," the court grants Middleton's motion and sets aside the entry of default. Colleton, 616 f.3d at 421 (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)).[1]

---

[1] The last factor is the availability of less drastic sanctions. Moradi, 673 F.2d at 728. Canopius argues that a less drastic sanction "would seem impotent in this context because they would not solve any of the prejudices inflicted upon" it and "would do little to deter" Middleton from further similar actions. Resp. 6. Since Canopius wants the court to issue an "all or nothing" decision, that is what it will get—nothing. As the old saying goes: "be careful what you ask for—you just might get it."

8

## IV.  CONCLUSION

For the reasons set forth above, Middleton's motion to set aside the entry of default in **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 11, 2016**
**Charleston, South Carolina**